761 A.2d 997

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY**

v.

**Melody LOWE, et al.**

**Nos. 2431, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Nov. 8, 2000.

Don F. Ryder, Jr. (Martell, Donnelly, Grimaldi & Donnelly, on the brief), Rockville, for appellant.

Alan R. Siciliano (DeCaro, Doran, Siciliano, Gallagher & DeBlasis, L.L.P., on the brief), Lahnam, for appellees.

Argued before EYLER, ROBERT L. KARWACKI (Retired, specially assigned) and ROBERT F. FISCHER (Retired, specially assigned), JJ.

ROBERT F. FISCHER, Judge (Retired, Specially Assigned).

The appeal before us stems from a motor vehicle accident that occurred on May 10, 1996, in which a car driven by Melody Lowe ("Ms. Lowe") collided with a car driven by Nicole Parsons. We are asked, in essence, to determine which of two insurers, if either, must provide coverage to Ms. Lowe.

## FACTS

Nicole Parsons and her husband, Michael Parsons, filed suit in the Circuit Court for Anne Arundel County against: Ms. Lowe; Ms. Lowe's father, Hubert Lowe;[1] and the Parsons' own insurer, State Farm Mutual Automobile Insurance Company[2] ("State Farm").

Hubert Lowe sold an automobile dealership to Bob Bell Automotive Group, Inc. ("Bell") in August of 1995. Pursuant to the sale agreement, Bell provided two cars to Hubert Lowe and his wife, Rebecca Lowe ("Mrs. Lowe"), for their personal

---

1. The suit alleged that Melody Lowe was an "agent, servant, and employee" of Hubert Lowe. Mr. Lowe is not a party to this appeal.

2. The Parsons misnamed their insurer as State Farm Insurance Companies. State Farm Mutual Automobile Insurance Companies insured the Parsons' vehicle. The Parsons' suit alleged that "Brethren Mutual Insurance Company, the insurance carrier for Defendants, Melody Lowe and Hubert Lowe, has refused to provide coverage to its insured, thereby requiring Plaintiffs to file an Uninsured Motorist claim with their own insurance carrier...."

use. The cars were still owned by Bell. Ms. Lowe was driving one of those vehicles when the accident occurred.

Bell's vehicles were insured by Universal Underwriters Insurance Company ("Universal"). In the declarations sheets to Bell's policy with Universal, Hubert and Rebecca Lowe were listed as "Other Insureds" for the following parts of the policy:

—"Auto Inventory Unicover Coverage Part 300," which, in pertinent part, provided coverage for any loss of or to any covered auto unless the auto was furnished or available for the regular use of an individual named in the declarations sheets as an insured or a family member of that individual. *See* Universal Policy, Part 300 at 9–14 and Endorsement No. 11 at 79–80.

—"Garage Unicover Coverage Part 500," which provided coverage for injuries that resulted from garage operations or auto hazard, and which extended, in certain circumstances to be discussed in more detail, *infra,* to autos "furnished [by Bell] for the use of any person or organization." *See* Universal Policy, Part 500 at 32–41.

Hubert and Rebecca Lowe were listed as "Named Insureds" under:

"Property Unicover Coverage Part 330," which provided coverage for loss to property located at various Bell locations. *See* Universal Policy, Part 330 at 15–25.

The Lowes were not listed as "Named Insureds" or "Other Insureds" under "Basic Auto Unicover Coverage Part 900." The only entity listed as insured under that part was Bob Bell Leasing, Inc. ("Bell Leasing"), which was identified as a "Named Insured." In pertinent part, Part 900 provided coverage for any injury resulting from an occurrence arising out of the ownership, maintenance, use, loading, or unloading of a vehicle owned or leased by Bell Leasing. *See* Universal Policy, Part 99 at 47. Part 900 specifically provided, however, that any person using such a vehicle within the scope of Bell

Leasing's permission was insured under the policy.[3] *See id.* at 49.

At the time of the accident, Melody Lowe resided in the household of her parents. Hubert and Rebecca Lowe owned several vehicles other than those provided by Bell, and those other vehicles were insured by Brethren Mutual Insurance Company ("Brethren"). Although Brethren began providing a defense to Ms. Lowe, it eventually denied coverage. Ms. Lowe then claimed coverage under the Universal policy.

Universal, in response, filed a declaratory judgment action in the Circuit Court for Anne Arundel County against Melody Lowe, Nicole and Michael Parsons, Brethren, and State Farm [4]. Universal averred that the Brethren policy "may have provided coverage to Melody Lowe for the claims of Nicole and Michael Parsons," and that, in any event, "at the time of the collision there was also in effect an insurance policy issued by State Farm to Nicole and Michael Parsons providing uninsured and underinsured motorist coverage to them for injuries arising out of the collision." Universal asked that the court declare that it "has no duty under its policy ... to provide a defense to Melody Lowe ... or to indemnify her for, or pay, any judgment which may be entered against her ...."

Ms. Lowe moved for summary judgment. In her written motion, she asserted, in essence, that there was no dispute that she had her parents' permission to use the car on the day the accident occurred. She concluded that she was therefore insured under Part 900 of the Universal policy, and asked the court to declare that, as a matter of law, Universal was

---

3. The parties do not explain the relationships between the various Bob Bell entities. We thus cannot determine whether the cars supplied to Hubert and Rebecca Lowe were supplied by Bob Bell Leasing as well as Bob Bell Automotive Group, Inc., and whether the permission granted to Mr. and Mrs. Lowe by Bob Bell Automotive Group, Inc. to use the car in question was the equivalent of permission from Bell Leasing.

4. Like the Parsons, Universal mistakenly referred to State Farm Mutual Automobile Insurance Company as State Farm Insurance Company.

required to defend and indemnify her. Ms. Lowe attached to her motion copies of the Universal policy and Universal's response to her request for admissions of fact. In the response, Universal admitted, *inter alia*, that Ms. Lowe had her parents' permission to use the car at the relevant time.

Universal opposed Ms. Lowe's motion for summary judgment and filed a cross-motion for summary judgment.[5] In its motion, Universal contended that Hubert and Rebecca Lowe were not insured under Part 900 of the policy and that the relevant coverage part was Part 500. It asserted that Bell had expressly forbidden Hubert and Rebecca Lowe to permit anyone else to use the automobile, and that Melody was therefore not covered under Part 500. Universal attached to its motion the affidavit of Bell general manager Michael Fitzpatrick, affirming that he had met with Hubert Lowe in August of 1995 and again in March of 1996 and had both times informed Mr. Lowe that "only he and his wife had permission to drive the automobiles being furnished to them pursuant to the sale of his automobile agency to Mr. Bell."

A hearing was held, and the parties reiterated the positions set forth in their memoranda. Counsel for Ms. Lowe contended that, on the face of the Universal policy, Hubert and Rebecca Lowe had authority, under both Part 900 and Part 500, to permit Melody Lowe to use the automobile. Ms. Lowe's counsel posited that the Fitzpatrick affidavit was inadmissible in that, in counsel's view, it was "extrinsic evidence . . . beyond the four corners of the insurance policy." In the event that the court believed such "extrinsic" evidence was admissible, counsel submitted to the court a letter dated August 26, 1995, which was apparently prepared for Hubert Lowe's signature but was never signed. If signed, the letter would have reflected Mr. Lowe's agreement that only he and Rebecca Lowe were to use the Bell vehicles. Counsel did not

---

5. The Parsons opposed Ms. Lowe's motion for summary judgment as well. In a memorandum filed with the court, the Parsons posited that the question as to coverage hinged on disputed facts, and that Universal and Brethren should be permitted to present evidence and argument at trial as to which insurer was responsible for primary coverage.

explain who prepared the unsigned letter or how it controverted the Fitzpatrick affidavit.

The court subsequently issued an order by which it resolved, in Ms. Lowe's favor, that portion of the declaratory judgment action regarding whether Universal was required to defend and indemnify Ms. Lowe. The order stated:

This matter came before this Honorable Court on February 8, 1999, for a hearing on the Plaintiff's [(Universal's)] Motion for Summary Judgment and the Defendant's [(Ms. Lowe's)] Motion for Summary Judgment. Having considered the arguments of both parties, it is this 9th day of February, 1999, by the authority of the Circuit Court for Anne Arundel County, State of Maryland.

ORDERED that the Plaintiff's Motion for Summary Judgment is DENIED; and it is further,

ORDERED that the Defendant's Motion for Summary Judgment [is] GRANTED; and it is further

ORDERED that judgment be entered in favor of the Defendant.

(Footnote omitted.) The only explanation for the court's decision was contained in a footnote, which provided:

Maryland Rule 2–501(c) states that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." In the present case there is no dispute as to the facts. Therefore, the only issue is whether either party is entitled to judgment as a matter of law.

The primary consideration in this case is whether the Defendant, Melody Lowe, was insured by the Plaintiff at the time of her accident. Having reviewed the terms of the policy, this Court finds that the Defendant, Melody Lowe, was an insured and entitled to indemnification to the extent provided for in the policy. Consequently, summary judgment in favor of the Defendant is appropriate.[6]

---

6. We note that the court's order, at best, barely meets the requirements for a declaratory judgment. "While a declaratory decree need not be in

Brethren also moved for summary judgment in the declaratory judgment action. Brethren pointed out that Hubert and Rebecca Lowe were the named insureds under its policy, and that the automobile in question was neither owned by Hubert and Rebecca Lowe nor listed in the declarations to the Brethren policy as a covered auto. Brethren further pointed out that the policy specifically excluded coverage for any automobile that was not a covered auto but was "furnished or available" for the "regular use" of the named insureds, Hubert and Rebecca Lowe. Brethren argued that, because there was no dispute that the car Melody Lowe was driving was furnished for the regular use of Hubert and Rebecca Lowe, Brethren was not required to provide coverage as a matter of law.

Universal opposed Brethren's motion, arguing, in essence, that because Melody Lowe was a family member of a named insured rather than a named insured herself, she was not subject to the exclusion for automobiles furnished or available for the regular use of named insureds.[7] A hearing was held

---

any particular form, it must pass upon and adjudicate the issues raised in the proceeding, to the end that the rights of the parties are *clearly* delineated and the controversy terminated." *Dart Drug. Corp. v. Hechinger Co., Inc.,* 272 Md. 15, 29, 320 A.2d 266 (1974) (emphasis added). *See also* Md.Code (1974, 1998 Repl.Vol., 2000 Cum.Supp.), § 3–411 of the Cts. & Jud. Proc. art.; *Maryland Assoc. of Health Maintenance Orgs. v. Health Servs. Cost Review Comm'n,* 356 Md. 581, 603–04, 741 A.2d 483 (1999), *Harford Mutual Ins. Co. v. Woodfin Equities Corp.,* 344 Md. 399, 414–15, 687 A.2d 652 (1997). Here, the court did not specify under which portion of the Universal policy it believed Melody Lowe was insured, and did not set forth the potential amount of coverage to be provided by Universal. Universal does not challenge the form of the court's order, however, and no party ever requested that the court determine the amount of potential coverage. In light of this, and of our ultimate disposition of the case, we shall not consider the matter further.

7. The Parsons opposed Brethren's motion and asserted that, after summary judgment was granted in Ms. Lowe's favor against Universal, Universal took the position that its policy could potentially cover only $20,000.000 in damages. The Parsons argued that, in the event the amount of damages proven exceeded the coverage provided by the Universal policy, Brethren would be required to cover the excess amount.

on November 18, 1999, and the court granted summary judgment in Brethren's favor. In the resulting order, the court explained:

> There is no dispute that the vehicle being driven by Melody Lowe was not an insured vehicle under the Brethren policy, nor is there any dispute that the vehicle was furnished by Bob Bell Automotive for the regular use of Herbert [sic] and Rebecca Lowe. Under these undisputed facts and as a matter of law, and under the unambiguous language of the Brethren policy, coverage is excluded for Melody Lowe's accident.

Although the Parsons' insurer, State Farm, filed an answer to Universal's declaratory judgment action, it did not move for summary judgment. In its answer, State Farm denied that "at the time of the collision there was ... in effect an insurance policy issued by State Farm to Nicole and Michael Parsons providing uninsured and underinsured motorist coverage to them for injuries arising out of the collision." It asserted that Universal and Brethren were required to provide coverage to Melody Lowe. The trial court has yet to rule on whether State Farm is required to provide any coverage.

## ISSUES

Universal is the appellant in this appeal. The appellees are Melody Lowe, Nicole and Michael Parsons, Brethren, and State Farm, although only Ms. Lowe and Brethren have filed briefs and appeared at oral argument. Universal challenges the two summary judgments entered by the trial court. It argues, in essence, that:

I. The trial court erred in granting Melody Lowe's motion for summary judgment and thereby declaring that she was insured under the Universal policy, and

II. The trial court erred in granting Brethren's motion for summary judgment and thereby declaring that coverage under the Brethren policy was excluded.

Because we find merit in Universal's first argument, we shall reverse the declaratory judgment to the effect that Melody

Lowe was insured under the Universal policy. We find no merit in the second argument and affirm the declaratory judgment as to Brethren.

## DISCUSSION

### Finality of Judgment

In its declaratory judgment action, Universal expressly sought a declaration that it "ha[d] no duty under its policy . . . to provide a defense to Melody Lowe . . . or to indemnify her for, or pay, any judgment which may be entered against her. . . ." By naming Nicole and Michael Parsons, Brethren, and State Farm as defendants in the action, in addition to Melody Lowe, Universal implicitly asked the trial court to declare which insurer was to provide primary coverage and which, if any, was to provide secondary coverage.[8]

■ As we have indicated, the court declared the rights of Universal and Melody Lowe as to the Universal policy when it ruled on their motions for summary judgment. It declared the rights of Brethren and Melody Lowe as to the Brethren policy when it ruled on Brethren's motion for summary judgment. The court has yet to rule on the rights of State Farm and the Parsons as to the Parsons' uninsured and underinsured motorist policy, however. Because the rights and liabil-

---

8. The defendant/appellees have never challenged the propriety of the declaratory judgment action as to insurance coverage, and any such challenge would have been unavailing. The Court of Appeals has repeatedly pointed out that declaratory judgment actions conclusively to determine liability insurance coverage, "by or against the tortfeasor's liability insurer, in advance of a determination of liability in a tort suit, are normally precluded except when issues in the declaratory judgment action are independent and separable from the claims of the tort claimant." . . . [A] declaratory judgment finally determining coverage is normally precluded in advance of the underlying tort suit unless the issues are independent and separable from the issues in the tort action. . . . *Vigilant Ins. Co. v. Luppino*, 352 Md. 481, 493, 723 A.2d 14 (1999) (citations and emphasis omitted). The issues in the declaratory judgment action—whether Melody Lowe was insured under the Universal policy and whether coverage was excluded under the Brethren policy—are clearly independent and separable from the Parsons' tort claims.

ities of *all* parties to the declaratory judgment action have not yet been adjudicated, the summary judgments are not final.

Maryland Rule 2–602 provides:

(a) **Generally.** Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action:

(1) is not a final judgment;

(2) does not terminate the action as to any of the claims or any of the parties; and

(3) is subject to revision at any time before the entry of a judgment that adjudicates all of the claims by and against all of the parties.

(b) **When allowed.** If the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment:

(1) as to one or more but fewer than all of the claims or parties. . . .

\* \* \*

As this Court has explained, "Rule 2–602(b) permits a circuit court to finalize for appeal an order or decision that adjudicates fewer than all of the claims in an action or the rights and liabilities of all the parties." *Tyrone W. v. Danielle R.*, 129 Md.App. 260, 270, 741 A.2d 553 (1999), *aff'd sub nom. Langston v. Riffe*, 359 Md. 396, 754 A.2d 389 (2000). "A prerequisite for the entry of such a judgment is an order that, absent the existence of multiple parties or multiple claims, would be final in the traditional sense." *Jenkins v. Jenkins*, 112 Md.App. 390, 424, 685 A.2d 817 (1996), *cert. denied*, 344 Md. 718, 690 A.2d 524 (1997). The discretionary authority granted by Rule 2–602(b) "is to be used sparingly in order to minimize 'piecemeal appeals and duplication of efforts and costs in cases involving multiple cases or multiple parties.'" *Tyrone W.*, 129 Md.App. at 271, 741 A.2d 553 (citation omit-

ted). "Rule 2–602(b) may not be used to certify as final only part of a claim." *G–C Partnership v. Schaefer*, 358 Md. 485, 488, 749 A.2d 823 (2000).

The trial court's summary judgments as to Universal and Brethren established that Universal was required to defend and indemnify Melody Lowe and Brethren was not. They resolved all the claims raised in the declaratory judgment action as to Universal and Brethren. The summary judgment in Ms. Lowe's favor against Universal indicated that State Farm would not be required to provide coverage to the Parsons unless the Universal policy was inadequate to cover the damages proven. It is logical that Universal be permitted to appeal at this point, rather than be forced to litigate the Parsons' tort suit on Ms. Lowe's behalf and appeal later whether Ms. Lowe was actually an insured. Indeed, because, as we shall hold, Ms. Lowe was *not* insured by Universal, such a course of action would force the wrong insurer to defend. Quite possibly, the one insurer that might be required to provide coverage in the Parsons' tort action—State Farm— would not even participate in the defense of that action. Under the circumstances, the trial court should have "expressly determine[d] in a written order that there [was] no just reason for delay," and should have "direct[ed] in the [summary judgment] order[s] the entry of final judgment[s]" as to Universal and Brethren. Md. Rule 2–602(b). *See generally Porter Hayden Co. v. Commercial Union Ins. Co.*, 339 Md. 150, 160–65, 661 A.2d 691 (1995) (discussing when summary judgment granted in declaratory judgment action against insurer can be certified as final).

■ That the court did not do so is of little consequence here. Under Md. Rule 8–602(e):

(1) If the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may, as it finds appropriate, (A) dismiss the appeal, (B) remand the case for the

lower court to decide whether to direct the entry of judgment, (C) *enter a final judgment on its own initiative*, or (D) if a final judgment was entered by the lower court after notice of appeal was filed, treat the notice of appeal as if filed on the same day as, but after, the entry of judgment.

\* \* \*

(3) If the appellate court enters a final judgment on its own initiative, it shall treat the notice of appeal as if filed on the date of the entry of the judgment and proceed with the appeal.

(Emphasis added.) In the interest of expediency, we therefore enter as final the summary judgments entered by the trial court and proceed with the appeal.

### Standard of Review

A trial court may grant summary judgment if "there is no genuine dispute as to any material fact and ... the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). In ruling on a motion for summary judgment, the trial court determines issues of law, "resolving no disputed issues of fact." *Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737, 625 A.2d 1005 (1993). "Ordinarily, an appellate court should review a grant of summary judgment only on the grounds relied upon by the trial court." *Blades v. Woods*, 338 Md. 475, 478, 659 A.2d 872 (1995) (per curiam). "[T]he standard for appellate review of a trial court's grant of a motion for summary judgment is simply whether the trial court was legally correct." *Beatty*, 330 Md. at 737, 625 A.2d 1005. "[A]n appellate court resolves all differences against the party making the motion." *Southland Corp. v. Griffith*, 332 Md. 704, 712, 633 A.2d 84 (1993).

In the case *sub judice*, the parties agree that there are no genuine disputes as to material fact, and no such disputes are apparent from the record. Our task is thus to determine whether the trial court correctly resolved the issues of law.

This Court has explained that " 'summary judgment in a declaratory judgment action is "the exception rather than the

rule"....'" *Utica Mutual Ins. Co. v. Miller,* 130 Md.App. 373, 380, 746 A.2d 935 (citations omitted), *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000). "Summary judgment may be warranted," however, "where there is no dispute as to the terms of an insurance contract but only as to their meaning." *Id.* Here, the parties do not dispute the terms of either the Universal policy or the Brethren policy. Rather, they disagree as to whether the terms should be construed to provide coverage to Melody Lowe. "[B]ecause [any] duty to defend [on the part of the two insurers] rests on the construction and interpretation of the contract, resolution by summary judgment [was] appropriate." *Id.*

██ "Under Maryland law, when deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself." *Bausch & Lomb v. Utica Mutual Ins. Co.,* 330 Md. 758, 779, 625 A.2d 1021 (1993). "Initially, we analyze the plain language of the contract according to words and phrases their ordinary and accepted meanings as defined by what a reasonably prudent lay person would understand them to mean." *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 166, 702 A.2d 767 (1997).

> Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. Rather, following the rule applicable to the construction of contracts generally, we hold that the intention of the parties is to be ascertained if reasonably possible from the policy as a whole. In the event of an ambiguity, however, extrinsic and parol evidence may be considered. If no extrinsic or parol evidence is introduced, or if the ambiguity remains after consideration of extrinsic or parol evidence that is introduced, it will be construed against the insurer as the drafter of the instrument.

*Cheney v. Bell National Life,* 315 Md. 761, 766–67, 556 A.2d 1135 (1989).

## The Universal Policy

Universal contends that the trial court erred by granting summary judgment against it and in favor of Melody Lowe on the ground that it was required to provide coverage to Melody Lowe. Ms. Lowe counters that summary judgment was proper, in that she was insured under both Part 500 and Part 900 of the Universal policy.[9] For reasons that follow, we agree that the policy did not insure Ms. Lowe.

The Universal policy consisted of three distinct portions. The first portion consisted of the declaration sheets which established, in essence, who was insured under the particular coverage parts and the amounts of potential insurance. As we have explained, Hubert and Rebecca Lowe were listed in the declarations sheets as "Other Insureds" for purposes of Part 500 of the Universal policy. Various Bob Bell entities, including Bob Bell Automotive Group, Inc., were listed as "Named Insureds" under Part 500. Mr. and Mrs. Lowe were not listed as insureds of any type for purposes of Part 900. Bell Leasing was the sole "Named Insured" under Part 900, and no "Other Insureds" were listed.

The second portion of the policy consisted of the "General Conditions" and the conditions under the various coverage parts. Significantly, the words "You" and "Your," as used throughout the policy, were defined in the "General Conditions" to mean "the person or organization shown in the declarations as the Named Insured." Universal Policy, General Conditions at 5. Finally, the third portion of the policy consisted of endorsements-or amendments-to the various coverage parts.

### Part 500

As we have explained, Part 500 provided coverage for garage operations or auto hazard. There is no dispute that the car driven by Ms. Lowe was not used for the purposes of

9. In its brief, Brethren adopts and incorporates by reference Ms. Lowe's arguments as to Universal's coverage.

garage operations. Thus, any coverage would have been by virtue of the auto hazard provision, which provided coverage, under certain circumstances, for any automobile owned by Bell which was in Bell's care, custody, or control and was "furnished for the use of any person or organization." Universal Policy, Part 500 at 32. In defining "WHO IS AN INSURED," the policy provided:

With respect to the AUTO HAZARD:

(1) YOU;

(2) Any of YOUR partners, paid employees, directors, stockholders, executive officers, a member of their household or a member of YOUR household, while using an AUTO covered by this Coverage Part, or when legally responsible for its use. The actual use of the AUTO must be by YOU or within the scope of YOUR permission;

(3) any CONTRACT DRIVER;

(4) Any other person or organization required by law to be an INSURED while using an AUTO covered by this Coverage Part within the scope of YOUR permission.

*Id.* at 35.

Part (4) of the definition was an omnibus clause [10], and provided coverage where Bell granted permission to use the automobile. Because there is no dispute that Bell gave Hubert and Rebecca Lowe permission to use the automobile in question, it is apparent that they were insured under Part (4) of the definition. In order for Melody Lowe to have been insured under Part (4), her use would have to have been within the scope of Bell's permission.

 Ms. Lowe points to two endorsements to Part 500, both of which were expressly made applicable in the declaration sheets to Hubert and Rebecca Lowe, which she contends

---

10. As we explained in *Blue Bird Cab Co., Inc. v. Amalgamated Casualty Ins. Co.,* 109 Md.App. 378, 391 n. 9, 675 A.2d 122 (1996), "[a]n omnibus clause in an automobile insurance policy 'extends coverage thereunder to [a] person using [an] automobile owned by [a] named insured with express or implied permission of the latter.' BLACK'S LAW DICTIONARY 1087 (6th ed.1990)."

extended coverage to her even without Bell's permission. Endorsement No. 31 states:

ADDITIONAL INSURED—FURNISHED AUTO

The WHO IS AN INSURED condition of this Coverage Part is changed by adding the following to "With respect to the AUTO HAZARD":

(5) The person or organization named in the declarations as subject to this endorsement, but only with respect to an AUTO furnished by YOU to such person or organization.

*Id.*, Endorsements at 90.

The plain language of Endorsement No. 31 does indeed indicate that Hubert and Rebecca Lowe were insured under the endorsement as persons to whom Bell furnished cars. Nothing in the language, however, suggests that Melody Lowe was an insured, or that Mr. and Mrs. Lowe were authorized to permit Melody Lowe or anyone else to use the automobile.

The other endorsement to which Ms. Lowe directs us, Endorsement No. 34, changed the definition of auto hazard for purposes of that endorsement alone. It stated:

"AUTO HAZARD" means the use of any AUTO (1) not owned by the individual or FAMILY MEMBERS, and (2) not used by any of them while working in the business of selling, servicing, repairing or parking AUTOS.

*Id.* at 91. Family member was defined, for purposes of Endorsement No. 34, to mean

any person related to the individual named in the declarations as insured under this endorsement, by marriage, blood, or adoption, who is a resident of his or her household. FAMILY MEMBERS includes a ward or foster child.

*Id.* Endorsement No. 34 provided:

DRIVE OTHER AUTOS

The WHO IS AN INSURED condition of this Coverage Part is changed by adding the following to "With respect to the AUTO HAZARD":

(5) The individual (and their FAMILY MEMBERS) named in the declarations as subject to this endorsement,

but only with respect to any AUTO not owned by them or any member of their household.

*Id.* Endorsement No. 34 then excluded from coverage, apparently under that endorsement alone, "any AUTO furnished or available for the regular use of the individual or FAMILY MEMBERS." *Id.*

It appears that, in the event that Bell or someone else provided a vehicle to Mr. and Mrs. Lowe or their family members, including Melody Lowe, *for temporary use,* Mr. and Mrs. Lowe and their family members would have been insured under Endorsement No. 34. Endorsement No. 34 did not provide coverage, however, where, as here, the vehicle was "furnished or available for ... regular use...." *Id.*

## Part 900

Part 900, like all of the coverage parts in the Universal policy, "applie[d] only when it is shown in the declarations." Universal Policy, Part 900 at 47. The coverage part defined an insured, in pertinent part, as

(1) YOU, including YOUR spouse, if a resident of the same household;

(2) under INSURING AGREEMENTS A and B [11]

\* \* \*

(b) any other person using an OWNED AUTO or TEMPORARY SUBSTITUTE AUTO within the scope of YOUR permission, unless it is being loaded or unloaded....

\* \* \*

Universal Policy, Part 900 at 49. Like part (4) of the definition of an insured under Part 500, part (2)(b) of the above-quoted definition was an omnibus clause. As we have observed, the policy defined the words "You" and "Your" to mean "the person or organization shown in the declarations as the Named Insured." Universal Policy, General Conditions at 5.

---

11. The parties do not specify whether the Universal policy is policy A or B, and the distinction is not apparent from the record extract.

The plain language of the policy makes clear that only those listed in the declarations as insured by Part 900 (in this case, only Bell Leasing) and those given permission by the "Named Insured" (again, in this case, Bell Leasing) were insureds under Part 900. Assuming, without deciding, that the permission to use the car in question that was granted to Mr. and Mrs. Lowe by Bob Bell Automotive Group, Inc. was the equivalent of permission granted by Bob Bell Leasing Corporation, Mr. and Mrs. Lowe would have been insureds under the omnibus clause of Part 900 by virtue of that permission. As under Part 500, Melody Lowe would have been an insured only if her use was within the scope of Bell's permission.

Ms. Lowe argues, however, that such a construction of the policy is not "sensible," in that it would have deprived all of the Bell entities except Bell Leasing of basic auto insurance. Ms. Lowe contends that it would be "far more sensible" to read the policy to have provided basic auto coverage under Part 900 to all of the persons listed anywhere in the declarations sheets, regardless of whether they were listed under Part 900.[12] She further argues that, under such a reading, Rebecca Lowe would not only have been insured but would have had authority to permit her to use the vehicle.

We decline to disregard the plain language of the policy. While nothing in the record extract describes the operations of the various Bob Bell entities that were insured under the policy, it is clear that Bell Leasing, which was listed as a

---

12. In support of this argument, Ms. Lowe points out that two persons were listed in the declaration sheets as excluded from coverage. She reasons that if Bell did not want her parents to permit her to use the car, it could have expressly excluded her from coverage as well. Nothing in the record extract suggests that the persons listed as excluded were, like Ms. Lowe, relatives of persons who used Bell cars with Bell's permission. It is more likely that those persons were Bell employees who were uninsurable due to their driving records and who therefore had to be excluded in order for Bell to obtain insurance. *Cf.* Md.Code (1995, 1997 Repl.Vol., 1999 Cum.Supp.), § 27–606 of the Ins. art. (regarding household exclusions). While it would be logical to expect Bell to specifically exclude from coverage certain persons who are uninsurable, it would not be logical to expect it to exclude every person to whom an insured might be tempted to lend an automobile.

named insured under Part 900, is in the business of leasing automobiles, while the other entities, which were not listed as insureds under that part, are in the business of either selling or repairing automobiles. In addition to the basic auto coverage provided by Part 900, the various parts of the Universal policy provided coverage for, *inter alia,* (i) losses to or of covered autos, (ii) property located at the various Bell locations, (iii) losses due to crime, (iv) losses due to garage operations and auto hazard, which covers automobiles used by employees and, under certain circumstances, automobiles furnished for the temporary or regular use of other persons, and (v) losses attributable to uninsured motorists. It appears that, even without interpreting the policy to have provided basic auto coverage to everyone listed in the declaration sheets, the policy met the statutory requirements for insurance coverage. *See* Maryland Code (1995, 1997 Repl.Vol.), § 19–504 of the Insurance Article; Md.Code (1977, 1999 Repl.Vol., 1999 Cum. Supp.), § 17–103 of the Transportation Article. Ms. Lowe does not suggest otherwise. In any event, there is no reason to believe that the Universal policy was the only insurance policy that covered the Bob Bell entities at the relevant time.

## Permission to Use Vehicle

The key question, then, is whether Melody Lowe's use of the automobile was within the scope of Bell's permission under either the omnibus clause in Part 500 or the omnibus clause in Part 900 of the policy. In order to answer that question, we must look beyond the terms of the policy to the extrinsic evidence offered by Melody Lowe and Universal with the motion and cross-motion for summary judgment.[13]

---

13. We reject Ms. Lowe's contention that the trial court could not—and this Court, in reviewing the trial court's decision cannot—properly consider the extrinsic evidence. Ms. Lowe suggests that Universal offered extrinsic evidence, regarding the scope of Bell's permission to Mr. and Mrs. Lowe, in order to modify the terms of the insurance policy. As we have explained, the plain language of the policy establishes that Ms. Lowe was an insured only if her use of the car was within the scope of Bell's permission. Extrinsic evidence would not modify or even explain the terms of the policy. It would serve to

A motion for summary judgment may be supported by affidavit and, indeed, "*shall* be supported by affidavit if filed before the day on which the adverse party's initial pleading or motion is filed." Md. Rule 2–501(a) (emphasis added). "When a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit or other written statement under oath." Md. Rule 2–501(b).

> Our cases recognize that in order to defeat a motion for summary judgment, the opposing party must show that there is a genuine dispute as to a material fact by proffering facts which would be admissible in evidence.... Consequently, mere general allegations which do not show facts in detail and with precision are insufficient to prevent summary judgment.... Moreover, a person opposing summary judgment cannot merely allude to the existence of a document and thereby hope to raise the specter of dispute over a material fact which would defeat a motion for summary judgment....

*Beatty,* 330 Md. at 737, 625 A.2d 1005.

Ms. Lowe attached to her motion for summary judgment a copy of the Universal policy and Universal's response to Ms. Lowe's request for admissions of fact. In its response to the request for admissions of fact, Universal admitted that, on the day of the accident, Ms. Lowe had the permission of Hubert and Rebecca Lowe to use the car. Universal attached to its

---

establish a matter separate and apart from the terms of the policy—whether Bell, implicitly or explicitly, gave Ms. Lowe permission to use the automobile. *See, e.g., Bond v. Pennsylvania Nat'l Mut. Casualty Ins. Co.,* 289 Md. 379, 382–84, 424 A.2d 765 (1981) (trial court properly granted summary judgment in insurer's favor where undisputed evidence established that named insured did not give permission to tortfeasor to use car); *Nat'l Grange Mut. Ins. Co. v. Pinkney,* 284 Md. 694, 707, 399 A.2d 877 (1979) (summary judgment against insurer should not have been entered, and case should have proceeded to trial, where there was genuine dispute as to whether tortfeasor was using vehicle within scope of named insured's permission).

cross-motion for summary judgment the affidavit of Bell general manager Michael Fitzpatrick. In pertinent part, Mr. Fitzpatrick affirmed:

\* \* \*

(3) In August, 1995, Bob Bell purchased from H.O. Lowe, an automobile agency. As part of the sale, Mr. Lowe and his wife were provided with the use of two automobiles. In early 1996, a 1995 Isuzu Rodeo automobile was furnished to Mr. & Mrs. Lowe in place of one of the two automobiles originally furnished to them.

(4) On August 26, 1995, I met with Mr. Lowe at the direction of Mr. Bell, and advised him that only he and his wife had permission to drive the automobiles being furnished to them pursuant to the sale of his automobile agency to Mr. Bell.

(5) In late March, 19[9]6, again on instructions from Mr. Bell, I met with Mr. H.O. Lowe, and pointed out to him that only he and his wife had permission to drive the automobile[s] which had been furnished to him pursuant to the agreement for the sale of his automobile agency to Bob Bell.

Ms. Lowe filed no written response to Universal's cross-motion for summary judgment. At a hearing on the motion and cross-motion, her counsel argued that the affidavit was "totally irrelevant" because it "goes beyond the four corners of the insurance policy...." Nevertheless, in the event that the court agreed with Universal that such extrinsic evidence should be considered, counsel offered into evidence a letter, dated August 26, 1995, which had apparently been prepared for Hubert Lowe's signature but was unsigned. The letter stated: "I understand that no family members other than Mrs. Rebecca Lowe and myself are permitted use of these two [automobiles]. I agree to accept personal responsibility if any non authorized person is involved in an accident driving these two [automobiles]."

Counsel did not explain the purported significance of the unsigned letter. He did not contend that the Mr. Lowe was never told that neither he nor his wife could permit their

daughter to use the car. Nor did counsel suggest that Mr. Lowe never passed that information on to Mrs. Lowe, or that Mr. Lowe's knowledge could not be imputed to Mrs. Lowe.[14] *Cf. Sullivan v. Mosner*, 266 Md. 479, 491, 295 A.2d 482 (1972) ("[I]n determining whether a [spouse] was the agent of [the other spouse] the ordinary rules of agency apply"). Rather, counsel stated: "I don't think that it matters whether they were told. . . . I think what matters is what is contained in the policy language. . . ." The affidavit of Michael Fitzpatrick, made under oath, amounted to evidence that Bell had informed Mr. Lowe, and through him Mrs. Lowe, that they did not have permission to let any third party use the Bell vehicles. The unsigned letter submitted by Ms. Lowe was simply inadequate to controvert the affidavit. *See* Md. Rule 2–501(b).

Ms. Lowe does not suggest that, for public policy reasons, the omnibus clauses should be interpreted to extend coverage to her, and any such argument would be unavailing.

In Maryland, there is an established legislative policy designed to make certain that those who own and operate motor vehicles in this State are financially responsible. . . . The legislative purpose has the overall effect of protecting the public by assuring that operators and owners of motor vehicles are financially able to pay compensation for damages resulting from motor vehicle accidents.

*Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980) (citations omitted). *See also Blue Bird Cab Co., Inc. v. Amalgamated Casualty Ins. Co.*, 109 Md.App. 378, 386–94, 675 A.2d 122 (1996) (discussing public policy as to automobile insurance). Nevertheless, "it is clear that the Maryland law does not prohibit . . . omnibus clauses [that confine coverage for third parties to the scope of the permission given] for public policy reasons." *Fisher v. United States Fidelity & Guaranty Co.*, 86 Md.App. 322, 327, 586 A.2d 783 (1991) (omnibus clause in policy issued to em-

---

14. As we have indicated, Ms. Lowe's position has always been that both her parents gave her permission to use the car.

ployer/owner of vehicle insured employee when using vehicle within scope of employment but not when using for personal reasons).

As a general rule, if a permittee allows a second permittee to drive an automobile, in violation of the named insured's express orders forbidding the permittee from authorizing such use by another, the second permittee is not within the coverage of an omnibus clause of an automobile insurance policy. In this regard, it has sometimes been stated that a second permittee using an automobile solely for his or her own purposes is not entitled to protection under the omnibus clause of an automobile liability insurance policy where the named insured expressly prohibited the initial permittee from allowing other persons to use or operate the car, or that when an owner gives permission to use an automobile to an original permittee, who is expressly forbidden to delegate that authority (unless the owner's conduct implicitly revokes the prohibition) the original permittee cannot grant permission to a second permittee.

7 Am.Jur.2d *Automobile Insurance* § 233 at 816–17 (1997).

In *Bond v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 289 Md. 379, 424 A.2d 765 (1981), the Court of Appeals interpreted an omnibus clause that included, as an insured, "any other person using [an automobile owned by the named insured] with the permission of the named insured, provided his actual operation or (if he is not operating) his actual use thereof is within the scope of such permission." The court determined that where a mother was the named insured, and the mother permitted her daughter to use the automobile but specifically prohibited her from allowing anyone else to use it, a third person who used the automobile with the daughter's permission was not insured under the policy. In doing so, the Court explained:

[O]ur inquiry is on the relationship between the named insured (the mother) and the first permittee [ (the daughter) ] and not, as [the plaintiff in a personal injury action] would have it, between the first and second permittees. Moreover, the existence of permission, whether express or

implied, is largely a factual determination, and one which varies in response to the circumstances present in each case. *Id.* at 385, 424 A.2d 765. The court went on to explain:

Unless some statute, regulation having the effect of a statute, or public policy is violated, (and none is suggested by the parties here) insurance, being contractual, is measured by contract terms. In this case the terms of the insurance agreement clearly require that the operator have permission of the named insured to drive the vehicle, and if that person does not, there is no coverage for her under this policy.

*Id.* at 387, 424 A.2d 765 (footnote omitted). *See also Nat'l Grange Mut. Ins. Co. v. Pinkney,* 284 Md. 694, 399 A.2d 877 (1979) (denying coverage under omnibus clause to employee of insured where employee used vehicle for personal reasons).

Because the plain language of the Universal policy provided that Melody Lowe was not an insured unless Bell permitted her to use the car, and because the uncontroverted evidence established that Bell expressly denied such permission, the trial court erred in granting summary judgment in Ms. Lowe's favor. We therefore reverse the judgment of the trial court and remand the case to that court with instructions to enter summary judgment in favor of Universal.

### The Brethren Policy

██ Universal further contends that the trial court erred by determining that the Brethren policy does not provide coverage in the instant case, and therefore granting summary judgment in Brethren's favor. We shall affirm the trial court's judgment as to Brethren.

Brethren issued a "Personal Auto Policy" to named insureds Hubert and Rebecca Lowe covering four vehicles owned by Mr. and Mrs. Lowe. Both Melody Lowe and her younger brother were listed as other drivers. The definition section of the policy stated, in pertinent part, "[t]hroughout this policy, 'you' and 'your' refer to . . . [t]he 'named insured' shown in the Declarations . . . ." Brethren Policy at 1. The policy defined

"[f]amily member" as "a person related to you by blood, marriage or adoption who is a resident of your household...." *Id.* It defined "[y]our covered auto" as "[a]ny vehicle show in the Declarations." *Id.*

Under the "Liability Coverage" part of the policy, "[i]nsured" meant "[y]ou or any 'family member' for the ownership, maintenance, or use of any auto ...," or "[a]ny person using 'your covered auto.'" Brethren Policy, Part A at 2. Thus, Melody Lowe, as well as Mr. and Mrs. Lowe, were clearly insureds under the policy. Coverage was specifically excluded, however, for:

\* \* \*

2. Any vehicle, other than "your covered auto", which is:
a. Owned by you; or
b. Furnished or available for your regular use.

\* \* \*

*Id.* at 3.

Thus, under the plain language of the Brethren policy, coverage was excluded for any vehicle other than a covered auto that was furnished or available for the regular use of the named insureds, Hubert and Rebecca Lowe. The exclusion clearly applied regardless of who was driving the vehicle when an accident occurred. *See, e.g., DiOrio v. New Jersey Mfrs. Ins. Co.,* 79 N.J. 257, 398 A.2d 1274 (1979), and *Progressive Northwestern Ins. Co. v. Hoverter,* 65 Wash.App. 872, 829 P.2d 783 (1992) (both holding that exclusions for non-covered autos furnished for the regular use of named insureds applied regardless of who was driving the vehicles). There is no dispute that the car Melody Lowe was driving had been furnished by Bell for the regular use of Mr. and Mrs. Lowe. Melody Lowe's contention that the exclusion did not apply to her because the car was not furnished for *her* regular use is nonsensical.

 Universal's further contention that Brethren should be required to defend Ms. Lowe in the Parsons' tort action even if the policy provides no coverage in the instant case is

similarly without merit. Universal asserts that "the obligation of a liability insurer to defend a tort action against its insured is determined by the allegations of the complaint in the tort action." It points out that, in their complaint, the Parsons alleged, albeit incorrectly, that at the time of the accident, Ms. Lowe was "operating an automobile *owned by her* ...." (Emphasis added.) Universal asserts that, because the Parsons' complaint does not "even suggest" that the vehicle Ms. Lowe was driving was not covered under the Brethren policy but had been furnished by someone else for the regular use of Hubert and Rebecca Lowe, there was "no basis for applying the exclusion...."

Universal is correct that, "[i]f the plaintiff[ ] in [a] tort suit[ ] allege[s] a claim covered by the policy, the insurer has a duty to defend." [15] *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 407, 347 A.2d 842 (1975). Moreover, an insurer "may not use extrinsic evidence to contest coverage under an insurance policy if the tort suit complaint establishes a potentiality of coverage...." *Aetna Casualty & Sur. Co. v. Coch-*

---

**15.** As this Court recently summarized,

The duty to defend an insured is broader than the duty to indemnify. *See Litz v. State Farm Fire and Cas. Co.,* 346 Md. 217, 225, 695 A.2d 566 (1997). Indeed, Maryland courts have recognized liability insurance policies as "litigation insurance ... protecting the insured from the expense of defending suits brought against him." *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 410, 347 A.2d 842 (1975). In *St. Paul Fire & Marine Ins. Co. v. Pryseski,* 292 Md. 187, 438 A.2d 282 (1981), the Court of Appeals articulated the following test:

In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two ... questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage?

*Id.* at 193, 438 A.2d 282. To answer these questions, a court "must ascertain the scope and limitations of coverage under the ... insurance policies and then determine whether the allegations in the [underlying] action would potentially be covered under those policies." *Aetna Cas. & Sur. Co. v. Cochran,* 337 Md. 98, 104, 651 A.2d 859 (1995).

*Utica Mutual Ins. Co. v. Miller,* 130 Md.App. 373, 381, 746 A.2d 935, *cert. denied,* 359 Md. 31, 753 A.2d 3 (2000).

*ran,* 337 Md. 98, 107, 651 A.2d 859 (1995). That is not to say, however, that a court must turn a blind eye where, as here, it is firmly established by judicial decree that an insured tortfeasor is excluded from coverage under particular terms of the insurance policy.

It was Universal that sought the declaration of rights as to the various insurers and Melody Lowe. It was Universal rather that Brethren, moreover, that first injected the "extrinsic" matter into the case, by alleging in its complaint that the car Melody Lowe was driving was owned by Bell and had been furnished for the use of Hubert and Rebecca Lowe. During the course of the declaratory judgment proceedings, there was no dispute among Universal, Brethren, Melody Lowe, or even the Parsons that Bell had furnished the car to Hubert and Rebecca Lowe in connection with the sale of their car dealership to Bell.[16] In responding to Brethren's motion for summary judgment in the declaratory judgment action, the Parsons abandoned the position taken in their tort complaint— that Melody Lowe "owned" the vehicle. They asserted in their response to the motion that, when the accident occurred, Ms. Lowe was driving an automobile owned by Bell, and that Bell had "permitted Hubert Lowe and Rebecca Lowe ... to have the use of the ... vehicle...."

Under the circumstances, it would defy logic to require Brethren, at this stage, to defend Ms. Lowe in the Parsons' tort action. While Brethren may have had an obligation to defend Ms. Lowe prior to the declaratory judgment—and we express no opinion in that regard-any such obligation was extinguished once the trial court determined that coverage was excluded under the policy. *Cf. Miller,* 130 Md.App. at 383, 746 A.2d 935 (explaining that where the plaintiffs suit involves several claims, and "any claims potentially come within the policy coverage, the insurer is obligated to defend

---

16. Although, in answering Universal's declaratory judgment complaint, State Farm denied Universal's allegation that Bell owned the car and had furnished it for the use of Hubert and Rebecca Lowe, State Farm never opposed summary judgment and never asserted that there was genuine dispute as to the matter.

all claims '... until such times ... that the claims have been limited to ones outside the policy coverage'" (citation omitted)).

SUMMARY JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY ENTERED AS FINAL; JUDGMENT AS TO UNIVERSAL UNDERWRITERS INSURANCE COMPANY REVERSED; JUDGMENT AS TO BRETHREN MUTUAL INSURANCE COMPANY AFFIRMED.

COSTS TO BE PAID ½ BY APPELLANT AND ½ BY APPELLEES.