# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

THE NORTHERN INSURANCE
COMPANY OF NEW YORK,
             *Plaintiff-Appellee,*

v.

BALTIMORE BUSINESS
COMMUNICATIONS, INCORPORATED,
             *Defendant-Appellant.*

COMPLEX INSURANCE CLAIMS
LITIGATION ASSOCIATION,
             *Amicus Supporting Appellee.*

No. 02-1358

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-01-2158-MJG)

Argued: February 26, 2003

Decided: June 19, 2003

Before WIDENER, KING, and SHEDD, Circuit Judges.

Vacated and remanded by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Mark Herbert Kolman, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C., for Appellant. Philip R. King, MECKLER, BULGER & TILSON, Chicago, Illinois,

for Appellee. **ON BRIEF:** Jerold Oshinsky, Karen Bush, Paul L. Spackman, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C.; Maureen E. Murphy, MURPHY & MURPHY, L.L.C., Catonsville, Maryland, for Appellant. Steven D. Pearson, Steven J. Ciszewski, MECKLER, BULGER & TILSON, Chicago, Illinois; Steven Ellis Leder, Craig David Roswell, Julie A. Maloney, NILES, BARTON & WILMER, L.L.P., Baltimore, Maryland, for Appellee. Laura A. Foggan, John C. Yang, Gary P. Seligman, WILEY, REIN & FIELDING, L.L.P., Washington, D.C., for Amicus Curiae.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Northern Insurance Company of New York ("Northern Insurance") initiated this declaratory judgment action in the District of Maryland, seeking a declaration that it was not obligated to defend and indemnify Baltimore Business Communications, Inc. ("Baltimore Business") in a class action lawsuit. The district court awarded summary judgment to Northern Insurance, concluding that it was not obliged to defend or indemnify Baltimore Business. *Northern Ins. Co. of N.Y. v. Baltimore Business Communications, Inc.*, MJG-01-2158, Memorandum and Order (D. Md. Feb. 28, 2002) (the "Order"). Baltimore Business has appealed the Order to this Court. Because the district court erred in its award of summary judgment to Northern Insurance, we vacate and remand.

I.

On April 19, 2001, J. Douglas Pinney and Patricia S. Colonell initiated a class action lawsuit in Maryland state court against Baltimore Business and twenty-five other defendants. *See Pinney v. Nokia, Inc.*,

No. 24-C-01-001897 (Cir. Ct. Baltimore City filed Apr. 19, 2001) (the "*Pinney* case").[1] The *Pinney* Complaint (the "Complaint") alleged that the defendants had manufactured, supplied, sold, and leased wireless handheld telephones ("cell phones") that emit dangerous levels of radiation. On this basis, the Complaint asserted multiple causes of action, specifically: failure to warn; defective design; violations of the Maryland Consumer Protection Act; breach of implied warranties; negligence; fraud; and civil conspiracy. On each cause of action, the Complaint sought, *inter alia*, "compensatory damages including but not limited to amounts necessary to purchase a [cell phone] headset . . . for each class member."[2]

Pursuant to a series of commercial general liability policies (collectively, the "Policy")[3] that it had purchased from Northern Insurance, Baltimore Business requested that it be defended and indemnified in the *Pinney* case. Northern Insurance denied this request and, on July 23, 2001, filed this declaratory judgment action, seeking a determination of whether it is obliged to defend and indemnify Baltimore Business in the *Pinney* case. Baltimore Business counterclaimed against Northern Insurance, seeking damages resulting from its refusal to defend. Both parties then moved the district court for summary judgment. By its Order, the court decided that the Policy only covered actions involving "damages because of bodily injury." Order at 12. The court then concluded that, because the Complaint merely sought cell phone headsets to prevent future injuries, its allegations against Baltimore Business did not fall within the Policy's coverage. *Id.* at

---

[1]The Complaint was first filed in the Circuit Court for Baltimore City, but the defendants removed it to the District of Maryland. The Judicial Panel on Multidistrict Litigation consolidated the *Pinney* case with four other class actions involving similar claims.

[2]A "headset" is a wire with a plug on one end that connects to a cell phone, and an "earbud" (a speaker/microphone device) on the other end that fits into the user's ear.

[3]The first policy Baltimore Business purchased from Northern Insurance was effective from November 11, 1998, until November 11, 1999. At the expiration of the first policy, and continuing yearly thereafter, Baltimore Business purchased policies from Northern Insurance that, for purposes of this appeal, are substantively identical. As such, for ease of reference, we refer to the policies collectively as the "Policy."

12-14. Accordingly, the court awarded summary judgment to Northern Insurance, ruling that it was not obliged to defend or indemnify Baltimore Business. Order at 14. Baltimore Business has appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review a district court's award of summary judgment de novo, viewing the facts and inferences drawn therefrom in the light most favorable to the non-movant. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." *Id.* at 248. A genuine issue of material fact only arises "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

## III.

### A.

Before turning to the issues raised in this proceeding, it is important to understand the pertinent legal principles governing an insurer's duty, under Maryland law, to defend its insured.[4] In Maryland, a court must, in assessing whether an insurer possesses a duty to defend its insured, engage in a two-step inquiry. *See St. Paul Fire & Marine Ins. Co. v. Pryseski*, 438 A.2d 282, 285-86 (Md. 1981). In this inquiry, the court must first determine the extent of insurance coverage by reviewing the policy's terms, conditions, and requirements. *Id.* In making this determination, the court is obliged to construe the insurance policy as it would an ordinary contract, according the policy's terms their "usual, ordinary, and accepted meaning," unless the parties intended otherwise. *Dutta v. State Farm Ins. Co.*, 769 A.2d 948, 957 (Md.

---

[4]This lawsuit is proceeding in federal court as a diversity action, and the parties agree that Maryland substantive law applies to the legal issues raised.

2001) (quoting *Cheney v. Bell Nat'l Life Ins. Co.*, 556 A.2d 1135, 1138 (Md. 1989)).

After identifying the extent of coverage, the court proceeds to the second aspect of the two-step *Pryseski* inquiry, determining whether the allegations in the underlying proceeding "potentially bring the tort claim within the policy's coverage." *Pryseski*, 438 A.2d at 285. If such a potentiality exists, the insurer is obliged to defend its insured. To trigger the duty to defend, the underlying complaint must allege a cause of action that is potentially covered by the policy, no matter how "attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 544 (Md. 1996). If a potentiality for coverage exists, the insurer is obliged to defend its insured even though the cause of action cannot possibly succeed, either in law or in fact. *Brohawn v. Transamerica Ins. Co.*, 347 A.2d 842, 850-51 (1975).

Importantly, an insured is entitled to present extrinsic evidence to the court in support of the potentiality of coverage.[5] *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859, 865-66 (Md. 1995). The reason for this rule is straightforward. If a potentiality for coverage is established, either by the complaint or by extrinsic evidence, the insured

---

[5]Historically, Maryland followed the exclusive pleading rule, which dictated that the potentiality for coverage was determined by reviewing only the complaint (from the underlying action) and the policy. In the 1990's, Maryland courts began to indicate that an insured can establish a potentiality of coverage by relying on the underlying complaint or "other sources available at the time defense is tendered." *See, e.g.*, *Harford Cty. v. Harford Mut. Ins. Co.*, 610 A.2d 286, 295 n.6 (Md. 1992). Since 1995, an insured has been entitled to submit "extrinsic evidence" to establish that its insurer has a duty to defend. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d 859 (Md. 1995).

Maryland courts have not defined the specific extent to which "extrinsic evidence" may be used in the context of an insurer's duty to defend. *See, e.g.*, *Chantel Assoc. v. Mount Vernon Fire Ins. Co.*, 656 A.2d 779, 784 (Md. 1995) (merely stating that "appropriate extrinsic evidence" is admissible in duty to defend case). However, answers, affidavits, and depositions appear to constitute permissible "extrinsic evidence." *Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 595 A.2d 469 (Md. 1991); *see Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566, 570-71 (Md. 1997).

is entitled to the benefit of its bargain, i.e., the insurer must defend. *Id.*; *see also Brohawn*, 347 A.2d at 851 (recognizing that liability insurance policies protect insured from expense of defending lawsuits).

By contrast, if the allegations in an underlying complaint raise the potentiality of coverage, the general rule is that the "insurer may not introduce extrinsic evidence that would take the claim outside the policy's coverage." *Baltimore Gas & Elec. Co. v. Commercial Union Ins. Co.*, 688 A.2d 496, 509 (Md. Ct. Spec. App. 1997); *see also Universal Underwriters Ins. Co. v. Lowe*, 761 A.2d 997, 1012 (Md. Ct. Spec. App. 2000) (stating that insurer "may not use extrinsic evidence to contest coverage under an insurance policy if the tort suit complaint establishes a potentiality of coverage") (internal quotation marks omitted). The rule against permitting the insurer to utilize extrinsic evidence seems to serve several interests. Most notably, it precludes the insurer from circumventing the potentiality rule by attempting to litigate the merits of an underlying lawsuit in the coverage action; any potentiality for coverage triggers the duty to defend.[6]

Significantly, Maryland recognizes two limited exceptions to the general rule against an insurer's use of extrinsic evidence. *Id.* at 510-12; *Lowe*, 761 A.2d at 1012. First, when the underlying tort plaintiff has amended his allegations against the insured, the insurer may utilize the amendments as extrinsic evidence. *Baltimore Gas*, 688 A.2d at 510. If the amended allegations no longer raise a potentiality for coverage, the insurer no longer has a duty to defend. As a second exception to the general rule, a court is not obligated to "turn a blind eye where [it is established] that an insured tortfeasor is excluded from coverage under [the] particular terms of the insurance policy." *Lowe*, 761 A.2d at 1012. In other words, an insurer may utilize uncontroverted extrinsic evidence from the underlying lawsuit if such evi-

---

[6]The limitation on extrinsic evidence also conserves judicial resources by avoiding duplicative litigation. 7C John A. Appleman, *Insurance Law & Practice* § 4686 (Walter F. Berdal ed., 1979). And it prevents an insured from being forced to take a position adverse to its own interests, i.e., that it is liable to the tort plaintiff in the underlying action. *Baltimore Gas*, 688 A.2d at 510.

dence clearly establishes that the suit's allegations are beyond the scope of coverage.

### B.

With these legal principles in mind, we turn to the first step of the *Pryseski* test, i.e., the identification of the scope of the Policy's coverage. Several of the Policy's provisions are relevant to this issue. Specifically, under the Policy, Northern Insurance agreed that it would "pay those sums that the injured becomes legally obligated to pay as *damages because of 'bodily injury'* . . . to which this insurance applies." *See, e.g.*, J.A. 229 (emphasis added). Further, Northern Insurance possesses the "duty to defend any 'suit' seeking those damages." *Id.* The Policy limits coverage to situations where a "'bodily injury' is caused by an 'occurrence' in the 'coverage territory' [and] occurs during the policy period." *Id.* at 230. An "occurrence" is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 241. With these Policy provisions in mind, we must assess whether there is a potentiality that the allegations of the Complaint are covered by the Policy.

### C.

The Complaint specifically alleged that the defendants, including Baltimore Business, "manufactured, supplied, promoted, sold, leased, and provided service for [cell phones] when they knew or should have known that their products generate and emit radio frequency radiation . . . that causes an adverse cellular reaction and/or cellular dysfunction through its adverse health effect[s]" on the body. Complaint at ¶ 1. It further alleges that the biological injury caused by the cell phones creates an increased health risk that the *Pinney* defendants (including Baltimore Business) could have eliminated or significantly mitigated by providing cell phone purchasers with headsets and appropriate warnings. *Id.* at ¶ 77. For each cause of action arising out of these common factual allegations, the Complaint sought, *inter alia*, "compensatory damages including but not limited to amounts necessary to purchase a [cell phone] headset . . . for each class member."[7] *Id.* at ¶ 100.

---

[7]The Complaint also sought reimbursement for class members who had already purchased headsets; instructions for using headsets and a list of advantages of such use; new cell phones with headsets for any class member whose phone cannot be used with a headset; punitive damages; costs, attorneys' fees, and prejudgment interest.

On the basis of its allegations, the Complaint asserts a claim for "damages because of bodily injury," as contemplated within the terms of the Policy. First, in alleging that persons using cell phones without headsets suffer from the radiation emitted by such phones, the Complaint alleges a "bodily injury." The Maryland courts have uniformly held that bodily injuries include those that occur at the minute, cellular level. *See, e.g.*, *Chantel Assocs. v. Mt. Vernon Fire Ins. Co.*, 656 A.2d 779, 884 (Md. 1995) (concluding that lead exposure causing direct and indirect damage to cells, tissues, and organs constitutes "bodily injury"); *see also Lloyd E. Mitchell, Inc. v. Md. Cas. Co.*, 595 A.2d 469, 476-78 (Md. 1991) (holding that allegation involving cellular-level bodily changes occurring after asbestos exposure constitutes "bodily injury"). In sum, in claiming that the *Pinney* plaintiffs suffered harm from radiation, the Complaint alleges a "bodily injury," as contemplated by the Policy.

Second, the allegations of the Complaint are sufficient to claim "damages because of" bodily injury. On this point, Northern Insurance asserts that the *Pinney* plaintiffs are seeking headsets to repair an alleged defect in Baltimore Business's own product and to limit the potential risk of future injury. Thus, according to Northern Insurance, the *Pinney* plaintiffs are not seeking "damages because of" bodily injury. We are unable, however, under Maryland law, to read the Complaint as Northern Insurance seeks to have it read. On the face of the Complaint, the *Pinney* plaintiffs are seeking unspecified compensatory damages flowing from their bodily injuries, i.e., harm suffered from radiation. Baltimore Business could therefore be potentially liable to the *Pinney* plaintiffs for any and all compensatory damages recoverable under Maryland law, including damages for already existing bodily injuries.[8] Therefore, unless admissible extrinsic evidence negates the allegations in the Complaint, Northern Insurance has a duty to defend Baltimore Business in the *Pinney* case. *Litz v. State Farm Fire & Cas. Co.*, 695 A.2d 566 (Md. 1997) ("[A]ny

---

[8]Under Maryland law, compensatory damages are defined as those "'damages awarded to a person as compensation, indemnity, or restitution for harm sustained by him.'" *Nast v. Lockett*, 539 A.2d 1113, 1116 (Md. 1988) (quoting *Black's Law Dictionary* 352 (5th ed. 1979)), *overruled on other grounds by Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633 (Md. 1992).

potentiality of coverage, no matter how slight, gives rise to a duty to defend.").

D.

Northern Insurance asserts that, even if the Complaint triggers its duty to defend, extrinsic evidence clearly shows that the allegations in the *Pinney* case are beyond the Policy's coverage. As mentioned above, under Maryland law, an insurer is entitled, in contesting coverage, to utilize extrinsic evidence of: (1) an amendment to the underlying complaint; or (2) uncontroverted evidence that clearly establishes that there is no potentiality for coverage. The first of these exceptions is inapplicable here, because the Complaint has not been amended to eliminate its broad request for compensatory damages. Thus, the only exception possibly applicable here is whether the uncontroverted extrinsic evidence establishes that the *Pinney* plaintiffs are not seeking "damages because of bodily injury."

In seeking to bring itself within the second exception to the general rule against an insurer's use of extrinsic evidence, Northern Insurance points to one of the plaintiff's filings in the *Pinney* case (the "Memorandum"). In that case, the defendants had sought dismissal of the Complaint, asserting, *inter alia*, that the plaintiffs had failed to allege the existence of a legally cognizable injury. In response, the Memorandum asserted that the plaintiffs were not seeking to redress any personal injuries resulting from the use of cell phones, stating:

> The [defendants] argument is based on the mistaken premise that this case is a personal injury action seeking damages for biological injury which has yet to symptomatically manifest itself. However, [we] are not seeking compensation for any personal injury suffered as a result of the use of cell phones. Rather, [our] pecuniary injuries are limited to the defective product itself. Plaintiffs' claims for damages relate to the need to repair or replace the portable wireless phones so as to remedy Defendants' failure to deliver a product that conforms with its contractual warranties and lives up to their representations.

Memorandum at 7. On the basis of this argumentative submission by their counsel, Northern Insurance contends that the *Pinney* plaintiffs

have conceded that they are not seeking "damages because of bodily injury," and that the Complaint simply seeks to obtain headsets to cure an allegedly defective product.

For at least two apparent reasons, Northern Insurance's reliance on the Memorandum, and its characterization of the allegations in the *Pinney* case, fail to conclusively establish that the *Pinney* plaintiffs have foresworn any claim for "damages because of bodily injury." First, such legal memoranda, unlike pleadings or affidavits, do not generally constitute binding judicial admissions.[9] *See Martel v. Stafford*, 992 F.2d 1244, 1248 (1st Cir. 1993) ("[U]nlike . . . trial court pleadings, statements contained in briefs submitted by a party's attorney in one case cannot routinely be used in another case as evidentiary admissions of the party." (citing *Hardy v. Johns-Manville Sales Corp.*, 851 F.2d 742, 745 (5th Cir. 1988)); *Lockert v. Faulkner*, 574 F. Supp. 606, 609 n.3 (N.D. Ind. 1983) (stating that memorandum in support of motion does not constitute binding judicial admission). Thus, we are unable to rely on the Memorandum to excuse Northern Insurance's duty to defend.

Second, if we accepted the Memorandum as binding, we would nonetheless be obliged to read it as a whole, and other statements made therein indicate that the *Pinney* plaintiffs, while not seeking traditional compensation, are in fact seeking relief designed to address an already existing bodily injury. Indeed, the Memorandum makes it apparent that the *Pinney* plaintiffs have reasserted the claims for relief made in the Complaint. The Memorandum states: "[t]he complaint seeks a remedy (a headset and appropriate warnings/instructions) *designed to eliminate the present and existing biological injury to which the defendants have exposed users of their products and services*." Memorandum at 5 (emphasis added). Examined as a whole,

---

[9]Maryland has neither approved nor specifically disapproved the use of legal memoranda and briefs as extrinsic evidence in this context. Its courts, however, have heretofore placed reliance on such materials as answers, depositions, and affidavits, that traditionally bind a party in an underlying action. *See supra* n.5. As a result, Maryland would likely adhere to the general rule enunciated above, that legal memoranda and briefs are not binding judicial admissions. We are thus unable to accord the Memorandum the weight suggested by Northern Insurance.

the Memorandum fails to eliminate the potentiality that Baltimore Business could be liable to the *Pinney* plaintiffs for damages as a result of bodily injury.[10] In sum, the *Pinney* plaintiffs are seeking remedies designed to eliminate already existing bodily injuries. While their claims may lack merit, we are unable to state with certainty that they do not seek "damages because of bodily injury." We must, in these circumstances, resolve the duty to defend in favor of the insured, Baltimore Business. *See Zurich Ins. Co. v. Principal Mut. Ins. Co.*, 761 A.2d 344, 348 (Md. Ct. Spec. App. 2000) ("Doubts as to whether an allegation indicates the possibility of coverage should be resolved in the insured's favor.").[11]

---

[10]Following briefing in this appeal, Northern Insurance submitted to us, pursuant to the Rule 28 of the Federal Rules of Appellate Procedure, two rulings from the *Pinney* case. In the first ruling, the district court declined to remand the *Pinney* case to state court. *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation*, 216 F.Supp. 2d 474 (D. Md. 2002) (the "Remand Decision"). In the Remand Decision, the court concluded that the *Pinney* lawsuit did not involve a traditional claim of compensation for personal injury. Instead, the court characterized the Complaint as a "disguised attack on federal" safety regulations. In the second ruling, addressing a preemption issue, the court again concluded that the *Pinney* plaintiffs "do not seek to compensate personal injury in these suits," and that the *Pinney* plaintiffs are seeking to overrule federal agency judgments regarding the safety of cell phones. *In re Wireless Telephone Radio Frequency Emissions Products Liability*, 248 F.Supp. 2d 452 (D. Md. 2003) (the "Preemption Decision").

In both the Remand Decision and the Preemption Decision, the court viewed the Complaint as a disguised attack on the adequacy of federal regulations governing radiation emission levels, rather than as an action seeking remedies for already existing injuries. As stated above, however, the *Pinney* plaintiffs view the Complaint quite differently. Moreover, the *Pinney* plaintiffs have appealed the Preemption Decision, and their appeal is presently pending in this Court.

[11]Northern Insurance has also presented us with alternative grounds for affirmance. First, it asserts that the Policy excludes coverage for: (1) damage to an insured's product; (2) damage to the insured's work in a product; (3) damage to property arising from an insured's product; and (4) damage involving a product's withdrawal or recall. The first three of these exclusions relate to property damage, rather than bodily injury, and are thus inapplicable. The fourth of these exclusions does not apply here because the cell phones have neither been withdrawn nor recalled.

## IV.

Pursuant to the foregoing, we vacate the summary judgment award to Northern Insurance, and we remand for such further proceedings as may be appropriate.

*VACATED AND REMANDED*

---

Second, Northern Insurance asserts that the Complaint fails to allege an "occurrence" under the Policy. We must reject this contention. As mentioned above, an "occurrence" is an "accident, including continuous or related exposure to substantially the same general harmful conditions." J.A. at 241. The Complaint alleges that the defendants negligently sold cell phones that emit radiation, thereby exposing users to an injury. Such a negligent act is clearly an occurrence. *See Sheets*, 679 A.2d at 548-59.