878 So.2d 824 (2004)
MOTOROLA, INC.
v.
ASSOCIATED INDEMNITY CORPORATION, Continental Casualty Company, National Surety Company, Transportation Insurance Company, Zurich American Insurance Company, Harbor Insurance Company, Hartford Accidental & Indemnity Co., Illinois National Insurance Company, National Union Fire Insurance Company, and St. Paul Surplus Lines Insurance Company.
No. 2002 CA 0716.
Court of Appeal of Louisiana, First Circuit.
June 25, 2004.
Rehearing Denied August 18, 2004.
*827 S. Gene Fendler, Harold J. Flanagan, New Orleans, J.W. Montgomery, III, Pittsburgh, PA, Counsel for Plaintiff/Appellant Motorola, Inc.
David P. Salley, New Orleans, Philip R. King, Chicago, IL, Counsel for Defendant/Appellee Zurich American Insurance Co.
Robert A. Vosbein, William J. Kelly, III, New Orleans, Counsel for Defendant/Appellee Continental Casualty Company.
Michael Durand, Lafayette, Counsel for Defendants/Appellees Associated Indemnity Corporation and National Surety Corporation.
Edward A. Rodrigue, Jr., New Orleans, Counsel for Defendant/Appellee St. Paul Surplus Lines Insurance Company.
Eavelyn T. Brooks, New Orleans, Counsel for Defendants/Appellees National Union Fire Insurance Company of Pittsburgh, Pennsylvania and Illinois National Insurance Company.
Before: CARTER, C.J., KUHN, DOWNING, GAIDRY, and McDONALD, JJ.
GAIDRY, J.
This is an appeal of a summary judgment rendered in a declaratory judgment action, relating to the issues of an insurance company's coverage and duty to defend its insured in various class action lawsuits. The trial court denied the motion for summary judgment of the plaintiff-appellant, Motorola, Inc. (Motorola), but granted the motion for summary judgment of the defendant-appellee, Zurich American Insurance Company (Zurich). Motorola appeals the summary judgment dismissing its claims against Zurich. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND
Motorola is a manufacturer of cellular wireless handheld telephones ("cell phones"). It was named as defendant in a number of class action lawsuits (the "Class Actions") seeking recovery of sums of money allegedly owed by Motorola and other cell phone manufacturers to alleviate customers' allegedly harmful exposure to radio frequency radiation. The Class Actions include Naquin v. Nokia Mobile Phones, Inc. (originally filed in Civil District Court for the Parish of Orleans, State of Louisiana); Pinney v. Nokia, Inc. (originally filed in the Circuit Court for Baltimore City, State of Maryland); Farina v. Nokia, Inc. (originally filed in the Court of Common Pleas for Philadelphia County, State of Pennsylvania); Gillian v. Nokia, Inc. (originally filed in the Supreme Court of the State of New York, Bronx County); and Gimpelson v. Nokia, Inc. (originally filed in the Superior Court for Fulton County, State of Georgia). All of the Class Actions were removed to federal court and joined as one multi-district action in the United States District Court for the District of Maryland. On March 5, 2003, the Class Actions were dismissed on the grounds that federal law preempted the causes of action asserted. In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation (RFE Litigation), 248 F.Supp.2d 452 (D.Md.2003). As of this writing, that judgment is on appeal to the United States Court of Appeals for the Fourth Circuit under docket number 03-1433. Despite the different forums in which the Class Actions were instituted and variations in phraseology of their allegations, they are all based upon a common conceptual framework, and share many allegations *828 which are virtually identical.[1]
In addition to the economic restitution for headsets, the Naquin plaintiffs originally claimed "an amount sufficient to pay for the costs of all medical monitoring to protect against and/or monitor for potential development of diseases or illness," attorney's fees, and legal interest. In their first supplemental and amended complaint, the Naquin plaintiffs amended their causes of action to exclude the claims for medical monitoring expenses and other "claims for any individualized physical injury."
Motorola filed this action for declaratory judgment and breach of contract against Zurich and nine other primary and excess liability insurers, seeking a determination that their policies provide coverage for the claims in the Class Actions, that they have the duty to defend Motorola for those claims, and that they are liable for damages to Motorola for their failure to defend it in the Class Actions.[2] Zurich issued two comprehensive general liability (CGL) policies to Motorola, in effect successively from July 1, 1985, to July 1, 1987. In addition to denying liability in its answer, Zurich asserted a reconventional demand for declaratory judgment "that it has no obligation to either defend and/or [sic] indemnify Motorola."
The trial court granted summary judgment in favor of Zurich, and denied Motorola's motion on the same issues. The summary judgment dismissed Zurich as a party defendant in this declaratory judgment action.[3] From that judgment, Motorola appeals.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Savana v. Certain Interested Underwriters at Lloyd's London, 01-2450, p. 3 (La.App. 1st Cir.7/2/02), 825 So.2d 1242, 1243.
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and is favored in our law. La. C.C.P. art. 966(A)(2). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions, and affidavits on file show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The initial burden is on the party moving for summary judgment to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse *829 party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2); Simmons v. Berry, 98-0660, p. 4 La.App. 1st Cir.12/22/00), 779 So.2d 910, 914. In deciding a motion for summary judgment, the supporting documents submitted by the parties should be scrutinized equally. Walker v. Phi Beta Sigma Fraternity (RHO Chapter), 96-2345, p. 5 (La.App. 1st Cir.12/29/97), 706 So.2d 525, 528.
Interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Madden v. Bourgeois, 95-2354, p. 3 (La.App. 1st Cir.6/28/96), 676 So.2d 790, 792. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Gaylord Chemical Corporation v. ProPump, Inc., 98-2367, pp. 3-4 (La.App. 1st Cir.2/18/00), 753 So.2d 349, 352.

PRINCIPLES OF INSURANCE POLICY INTERPRETATION
An insurance policy is a contract between the parties, and should be construed employing the general rules of interpretation of contracts. Blackburn v. National Union Fire Insurance Company of Pittsburgh, 00-2668, pp. 5-6 (La.4/3/01), 784 So.2d 637, 641. Words in an insurance policy must therefore be given their generally prevailing meaning, unless they have acquired a technical meaning, in which case the technical meaning applies. La. C.C. art. 2047; Succession of Fannaly v. Lafayette Insurance Company, 01-1355, p. 3 (La.1/15/02), 805 So.2d 1134, 1137. An insurance policy is construed as a whole, and each provision in the policy must be interpreted in light of the other provisions. Id., 01-1355 at pp. 3-4, 805 So.2d at 1137. If an ambiguity remains after applying the general rules of contractual interpretation, the ambiguous policy provision is construed against the insurer who furnished the policy's text and in favor of the insured. Id., 01-1355, at p. 4, 805 So.2d at 1138.
An insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Magnon v. Collins, 98-2822, p. 7 (La.7/7/99), 739 So.2d 191, 196. Likewise, a court should not strain to find ambiguity in a policy where none exists. Gaylord Chemical Corporation, 98-2367 at p. 4, 753 So.2d at 352. These principles of interpretation are generally accepted and followed in all jurisdictions of this country.

ANALYSIS
The only issue properly before us is whether the trial court was correct in concluding that their pending claims cannot, as a matter of law, be covered as claims for "damages because of bodily injury." That is, if the class action plaintiffs have potentially valid causes of action against Motorola, do such causes of action seek relief for "damages because of bodily injury," triggering Zurich's duty to defend and indemnify Motorola? In order to resolve this issue, it is necessary to define the phrase "damages because of bodily injury" as used in the policy at issue.[4]

*830 "Damages Because of Bodily Injury"

The precise issues confronting us were previously considered by the U.S. Court of Appeals for the Fourth Circuit in Northern Insurance Company of New York v. Baltimore Business Communications, Inc., 68 Fed.Appx. 414, 2003 WL 21404703 (4th Cir.2003) (unpublished opinion). There, the court was presented with a summary judgment rendered in a declaratory judgment action instituted by an insurer of a defendant in the Pinney action, one of the Class Actions. The insurer sought judgment declaring it had no duty to defend or indemnify the insured on the grounds that the Pinney action was not one seeking "damages because of bodily injury" and that one or more of four "business risk" exclusions were applicable under the plaintiffs' allegations. The appellate court disagreed with the district court's conclusion that the complaint's allegations did not seek such damages and therefore did not fall within the policy coverage. The appellate court noted that under Maryland law, "bodily injuries include those that occur at the minute, cellular level," and by alleging that they suffered harm from radiation, the plaintiffs alleged a "bodily injury." Id. at 419. The court interpreted the allegations as "seeking unspecified compensatory damages flowing from their bodily injuries, i.e., harm suffered from radiation," and that the defendant could therefore be "potentially liable ... for any and all compensatory damages recoverable." Id. at 420. Finally, while acknowledging that the plaintiffs did not seek "traditional compensation," the court concluded that the issue of the insurer's duty to defend must be resolved in favor of the insured. Id. at 422.
The court's decision in Northern Insurance is not binding upon us, however. For that reason, as well as the different parties involved and the necessity to resolve the issues as to the other Class Actions, we undertake our own independent analysis of these issues.
The class action plaintiffs' allegations asserting the factual basis of the defendants' liability clearly sound in tort.[5] The policies at issue provide coverage for tort liability. Regardless of whether tort liability is based upon the venerable theory of "proximate cause" or the "duty-risk" analysis, a common, indispensable element *831 in all tort cases is that of damages. As succinctly stated by one of our leading commentators, "[i]f there is no damage, or injury, there is no tort." 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law § 4.7 (2000). In its memorandum opinion dismissing the Class Actions as preempted by federal law, the federal district court characterized the relief sought in each action as "[c]ompensatory damages." RFE Litigation, 248 F.Supp.2d at 458.[6] At the same time, however, that court conceded that "these lawsuits do not involve a traditional claim of compensation for personal injury." Id. at 462. Despite the nontraditional forms of relief sought, the court concluded that the Class Actions fell within the broad category of "state tort lawsuits." Id. at 466.
It has been observed that "Louisiana is generous in its conception of damage, the slightest being sufficient to support an action." 12 William E. Crawford, Louisiana Civil Law Treatise: Tort Law § 3.4 (2000). Damages recoverable may include "future damages not yet suffered but feared and impending" and "fear of future harm." Id. at § 3.6.
The terms "damages" and "bodily injury" are not defined in Zurich's policy.[7] "Damage[s]" is generally defined as meaning "compensation in money imposed by law for loss or injury." Merriam-Webster's Collegiate Dictionary 291 (10th ed.1993). To the extent that the Class Actions seek to compel Motorola to supply headsets to the class action claimants, they seemingly do not assert claims for "damages" under the foregoing definition. However, to the extent that they seek the "costs of headsets" (Farina and Gillian complaints), "amounts necessary to purchase" headsets (Gillian, Gimpelson and Pinney complaints), "reimbursement" of the costs of headsets already purchased by customers (Gillian, Gimpelson, Naquin, and Pinney complaints), and a "reduction in price sufficient to obtain a headset" (Naquin complaint), the Class Actions clearly seek monetary compensation, albeit of a limited nature. Does such relief constitute "damages," and if so, does it constitute "damages because of bodily injury?"
Comparing the allegations of the Naquin plaintiffs' complaint with the foregoing general definitions, it is obvious that those allegations set forth claims predicated upon ongoing, repetitive injurious exposure to allegedly harmful conditions generated by Motorola's products already in use, as well as future injurious exposure from its products later sold. Zurich claims that the recovery sought by the class action plaintiffs is therefore purely preventative in nature, and not based upon "bodily injury" which has already occurred. Its argument is seemingly supported by the fact that the class of claimants for which certification is sought has been defined to include future purchasers of cell phones without headsets, as opposed to only past purchasers of cell phones and cell phone headsets.
*832 Zurich's policy requires that damages covered under its liability coverage be caused by an "occurrence." Reading the policy as a whole, as we are obligated to do, it is readily apparent that the policy definition of "occurrence" is helpful in determining the intent of the parties as to the "bodily injury" covered. An "occurrence" is defined as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." (Our emphasis.) Thus, the policy clearly contemplates coverage for bodily injury resulting from "repeated exposure to conditions." There is no requirement that each incident of exposure result in injury, only that the cumulative or progressive effect of repeated exposure results in "bodily injury."[8]
We first examine the issue within the framework of our state's law. The broad ambit of damages recoverable under La. C.C. art. 2315 is illustrated by the case of Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. The Louisiana Supreme Court, for the first time, was called upon to determine whether a factfinder's failure to award general damages was legal error after a finding of liability and an award of medical expenses. The plaintiffs' minor son had been prescribed an antidepressant after being diagnosed with post-traumatic stress syndrome caused by a fire at home. The prescription was incorrectly filled with a higher dosage than prescribed. The plaintiffs sued the pharmacy, alleging that the overdosage caused their son to become combative and violent, necessitating his hospitalization for one day, and affected his academic performance. They sought recovery of general damages, medical expenses, past and future counseling expenses, and loss of consortium. At the conclusion of trial, the jury found that the pharmacy's fault was the cause of the minor's "injuries," but awarded only medical expenses. The courts of appeal, with limited exceptions, had previously seemed to apply a general rule that an award of special damages for personal injury without an award of general damages constituted legal error. The court observed that the exceptions demonstrated that "a jury, in the exercise of its discretion as factfinder, can reasonably reach the conclusion that a plaintiff has proven his entitlement to recovery of certain medical costs, yet failed to prove that he endured compensable pain and suffering as the result of defendant's fault." Id., 00-0492 at p. 8, 774 So.2d at 76. Analyzing the prior Louisiana jurisprudence and that of other states, the supreme court held that there is no "bright line rule" that an award of special damages without corresponding general damages constitutes legal error. Id., 00-0492 at p. 9, 774 So.2d at 76. Rather, the issue in such a case is actually whether the factfinder made inconsistent awards under the particular facts of the case.
The supreme court in Wainwright overruled the appellate court and reinstated the jury's verdict, holding that the jury did not abuse its discretion in failing to award *833 general damages, since "there was ample evidence from which the jury could conclude that [the minor's] brief overdose and hospitalization resulted in no compensable pain and suffering." Wainwright, 00-0492 at p. 10, 774 So.2d at 77. Summarizing the basis for its decision, the court stated:
Since [the pharmacy] admitted its liability for the overdose, the jury would have been justified in awarding the [plaintiffs] medical expenses incurred in insuring that [the minor] had suffered no adverse effects from the medication. (Our emphasis).
Id., 00-0492 at pp. 10-11, 774 So.2d at 77. The ultimate result was that although there was no manifest injury proven, some "damages" for determining no injury existed were still recoverable under our law.
The following language from Justice Lemmon's additional assigned reasons in Wainwright is especially pertinent here:
When a tortfeasor causes an occurrence which subjects the tort victim to the reasonable possibility of serious injury, the tortfeasor is liable for the reasonable expenses incurred by the tort victim in consulting appropriate medical personnel and in insuring that the adverse effects of the occurrence will be prevented or minimized. This liability for medical consultation or treatment ensues from the tort even if the tort victim is fortunate enough that serious injury does not actually result. (Our emphasis; footnotes omitted.)
Wainwright v. Fontenot, 00-0492 at p. 1, 774 So.2d at 78 (Lemmon, J., subscribing opinion). The class action plaintiffs' present claims, even if reduced to recovery of appropriate headsets or their cost, still seem to fit squarely within the framework of the principle articulated above.[9]
The liberal interpretation of the term "bodily injury" for purposes of insurance coverage in Louisiana is further illustrated by those cases which have held that "mental anguish" and "mental injury" may constitute "bodily injury" within the meaning of a liability insurance policy. See Crabtree v. State Farm Insurance Co., 93-0509 (La.2/28/94), 632 So.2d 736, 743-45; Ledbetter v. Concord General Corp., 95-0809, p. 5 (La.1/6/96), 665 So.2d 1166, 1169.
In Bourgeois v. A.P. Green Industries, Inc., 97-3188 (La.7/8/98), 716 So.2d 355 (Bourgeois I), our supreme court was called upon to determine whether asymptomatic members of a class of workers exposed to asbestos, seeking the costs of periodic medical monitoring, stated a cause of action for "damages" under La. C.C. art. 2315. Reversing the appellate court, the supreme court held that claims for medical monitoring to detect the onset of disease were actionable provided certain criteria were met. In doing so, the court extensively reviewed the jurisprudence of other state and federal courts on claims for medical monitoring, noting that "a majority of state supreme courts ... have authorized recovery for medical monitoring in the absence of physical injury." Id., 97-3188 at p. 7, 716 So.2d at 359-60.
By Acts 1999, No. 989, the legislature sought to overrule Bourgeois I by amending La. C.C. art. 2315 to expressly exclude "costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease." Despite language in the act purporting to characterize it as interpretative *834 of the codal article's original intent and to expressly give the amendment retroactive effect, the supreme court in Bourgeois v. A.P. Green Industries, Inc., 00-1528, p. 12 (La.4/3/01), 783 So.2d 1251, 1261 (Bourgeois II), held that the amendment could not be applied retroactively, as such would violate due process by divesting persons of vested rights.
The original elements of the Naquin plaintiffs' claims were clearly consistent with similar claims for damages for medical monitoring necessitated by exposure to toxic or harmful agents. Regardless of whether the element of medical monitoring damages has been eliminated from consideration in the Naquin case, the remaining claims, like those in Bourgeois I, are still predicated upon the existence of a legally protected interest in avoiding physical injury. To that extent, the remaining claims are clearly analogous to claims for medical monitoring, which were recognized as delictual claims under La. C.C. art. 2315 until its 1999 amendment. Despite the Naquin plaintiffs' voluntary elimination of claims for certain elements of alleged damages, the factual grounds of their cause of action remain the same. We perceive no real theoretical or practical distinction between their original causes of action and their remaining causes of action. Since the interest upon which recovery is predicated is still personal bodily integrity, the Naquin plaintiffs' claims must be characterized as falling within the broad category of claims for damages because of bodily injury.
We are aware of the supreme court's holdings in Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, and Bonnette v. Conoco, Inc., 01-2767 (La.1/28/03), 837 So.2d 1219, relating to the analogous issue of damages for long-latency or insidious disease following exposure to asbestos.[10] Regardless of the potential effect of those holdings upon the merits of the Naquin plaintiffs' claims, we emphasize that we are not confronted with the sufficiency of the plaintiffs' allegations in meeting the criteria of those cases nor with the merits of the Class Actions. We need only determine the narrower issue of whether there exists any reasonable interpretation of the policy, given the plaintiffs' allegations and the undisputed material facts, under which coverage could be afforded.
The artful crafting of the class action plaintiffs' pleadings, presumably motivated to aid in maintaining class action status, has not served to substantially alter the factual allegations upon which the limited relief sought is based. The form of the relief sought in the Class Actions does not change its essential character or purpose, which is that of "damages" in tort or products liability. Although the relief purportedly sought consists of tangible accessories to property of the class action plaintiffs, or the accessories' monetary value, the class action plaintiffs plainly seek such relief "because of bodily injury." In that regard, we note that our Civil Code provides that obligations may be extinguished by a "giving in payment," traditionally called a dation en paiement, whereby an obligor gives a thing to an obligee, who accepts it in full or partial payment of a debt. La. C.C. arts. 2655, 2657. Any type of obligation (including a delictual obligation) may be extinguished by a giving in payment. La. C.C. art. 2655, 1993 Revision Comment (f). The relief sought by the class action plaintiffs is analogous, if not identical, to a partial giving in payment.
*835 As to those claims arising in other states, the issue of whether the "in kind" relief sought by the class action plaintiffs fall within the concept of "damages" is less clear. The relief sought, in the form of provision of headsets, seems to constitute a form of "specific performance," recognized as an equitable remedy in common-law states. Can such "in kind" relief constitute damages within the meaning of a CGL policy? We find that it can.
At common law, declaratory judgment, specific performance, and injunctive relief are traditionally considered equitable remedies. The Missouri Supreme Court was faced with a similar coverage issue for its determination in Farmland Industries, Inc. v. Republic Insurance Company, 941 S.W.2d 505 (Mo.3/25/97). There, affiliated companies brought a declaratory judgment action against various insurers who issued them CGL and excess liability policies. They sought a determination that the insurers were obligated to defend and indemnify them for environmental response costs relating to investigation and remediation required by the Environmental Protection Agency under the Comprehensive Environmental Response Compensation Liability Act of 1980 (CERCLA), 42 U.S.C. §§ 9601, et seq., and by state agencies under analogous state statutes. The policies contained language similar to that at issue here. The plaintiff insureds filed a motion for partial summary judgment on the issue of whether environmental response costs constituted "damages" under the policies. The defendant insurers filed a cross-motion for summary judgment, advocating the contrary position. The adverse parties agreed that the costs at issue were in the nature of equitable relief. The insurers argued that the term "damages" referred only to "legal damages," or "payments to third persons when those persons have a legal claim for damages." Id. at 508. They further argued that the "specific actions ..., such as investigating, planning, and cleaning up pollution" ordered by the government were not "damages" because they were not the "money equivalent for detriment or injuries sustained." Id. The court disagreed, holding that under Missouri law, the ordinary meaning of "damages" included equitable relief, and that the environmental response costs incurred were "damages" under the policies. Id. at 509.[11]

The "Business Risk" Exclusions
Zurich further contends that Exclusions (m), (n), and (o) of its policy apply to remove the class action plaintiffs' claims from the ambit of its policy coverage.[12] *836 Our de novo review of the policy terms leads us to the conclusion that the exclusions at issue do not apply to the plaintiffs' claims asserted in the Class Actions. Simply stated, these exclusions relate only to loss of use or damage to property, including the cell phones at issue, and thus have no relevance to the "bodily injury" claims at issue. See supra note 4, and accompanying text.

The Insurer's Duty to Defend
A liability insurer's duty to defend and the scope of its coverage are separate and distinct issues. Dennis v. Finish Line, Inc., 93-0638 (La.App. 1st Cir.3/11/94), 636 So.2d 944, 946, writ denied, 94-1652 (La.10/7/94), 644 So.2d 636. It is likewise well-recognized that the obligation of a liability insurer to defend suits against its insured is generally broader than its obligation to provide coverage for damages claims. Steptore v. Masco Construction Company, Inc., 93-2064, p. 8 (La.8/18/94), 643 So.2d 1213, 1218. Thus, even if a plaintiff's claim against an insured probably lacks merit, the insurer must defend its insured, if the claim conceivably falls within its coverage. The language of Zurich's policy accords with this general rule, as Zurich expressly assumes the "duty to defend any suit against the insured seeking damages on account of bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent."
The issue of whether a liability insurer has the duty to defend a civil action against its insured is determined by application of the "eight-corners rule," under which an insurer must look to the "four corners" of the plaintiff's petition and the "four corners" of its policy to determine whether it owes that duty. Vaughn v. Franklin, 00-0291, p. 5 (La.App. 1st Cir.3/28/01), 785 So.2d 79, 84, writ denied, 01-1551 (La.10/5/01), 798 So.2d 969. Under this analysis, the factual allegations of the plaintiff's petition must be liberally interpreted to determine whether they set forth grounds which raise even the possibility of liability under the policy. Id. In other words, the test is not whether the allegations unambiguously assert coverage, but rather whether they do not unambiguously exclude coverage. Vaughn, 00-0291 at p. 6, 785 So.2d at 84. Similarly, even though a plaintiff's petition may allege numerous claims for which coverage is excluded under an insurer's policy, a duty to defend may nonetheless exist if there is at least a single allegation in the petition under which coverage is not unambiguously excluded. Employees Insurance Representatives, Inc. v. Employers Reinsurance Corporation, 94-0676, p. 3 (La.App. 1st Cir. 3/3/95), 653 So.2d 27, 29, writ denied, 95-1334 (La.9/1/95), 658 So.2d 1268.
*837 An insurer should not be allowed to escape its responsibility to defend on a mere technicality based on the type of relief prayed for by a plaintiff, where the insured can be held liable for other damages under the petition. Thomas v. Appalachian Insurance Company, 335 So.2d 789, 792 (La.App. 1st Cir.1976).[13] This is precisely the result warranted under the present facts. In Thomas, the plaintiff sued a Louisiana state trooper in federal court, claiming to have sustained personal injury through the exercise of unnecessary force by the trooper in arresting him. For some reason, the plaintiff sought only punitive damages and medical expenses. The general liability insurer for the state police sought declaratory judgment in state court, contending it had no duty to defend the trooper since its policy excluded coverage for punitive damages. This court rejected the insurer's contention, observing that the federal district court was authorized under its procedural rules to grant any relief to which the plaintiff was entitled, even if not demanded. In doing so, we further affirmed the longstanding rule that an insurer's obligation to defend its insured is broader than its obligation to indemnify. Id.
The instant case presents an even stronger case than Thomas for the determination that the insurer owes its insured a duty of defense. Contrary to Zurich's contentions, the limited relief sought by plaintiffs is not solely determinative of the scope of either Zurich's coverage or its duty to defend. Given the expansive nature of insurers' duty to defend, the only reasonable conclusion is that the Class Actions present claims for "damages on account of such bodily injury," and that Zurich owes Motorola the obligation of defending it in the Class Actions. We conclude, as did the court in Northern Insurance, that "[w]hile [plaintiffs'] claims may lack merit, we are unable to state with certainty that they do not seek `damages because of bodily injury.'" Northern Insurance, 68 Fed.Appx. at 421-22. Accordingly, the judgment of the trial court on the issue of Zurich's duty to defend Motorola must also be reversed.

CONCLUSION
The state of the law nationwide as to the validity and parameters of insidious injury and disease claims such as those asserted in the Class Actions is in flux. We cannot say, as a matter of law, that the relief sought by the class action plaintiffs falls outside the broad scope of "damages because of bodily injury." Thus, we conclude that Zurich's policy imposes the duty to defend Motorola under the factual allegations of the Class Actions. The resolution of the issue of Zurich's duty to indemnify Motorola will necessarily depend on the disposition of the merits of the Class Actions.

DECREE
The judgment of the trial court is reversed, and the case is remanded to the trial court. All costs of this appeal are assessed against the defendant-appellee, Zurich American Insurance Company.
REVERSED AND REMANDED.
KUHN, J., concurs with reasons.
McDONALD, J., dissents.
DOWNING, J., dissents and assigns reasons.
*838 KUHN, Judge, concurring.
I disagree with the majority's conclusion that the articulation of reasons for designation of a partial judgment (or partial summary judgment) as final for purposes of an immediate appeal by the trial court is not a jurisdictional defect. I also disagree with the majority's conclusion that the partial summary judgments in favor of insurers Associated Indemnity Company and Hartford Insurance Company, which dismissed the claims of Motorola, Inc. against those insurers under La. C.C.P. art. 1915 A(1) and (3), are immediately appealable without need for certification under article 1915 B for the reasons expressed in my dissent in Motorola Inc. v. Associated Indem. Corp., XXXX-XXXX (La.App. 1st Cir.4/30/03), 867 So.2d 715, 2003 WL 21000918. But as I am duty bound to adhere to this court's en banc determinations to the contrary, see Motorola Inc. v. Associated Indem. Corp., XXXX-XXXX (La.App. 1st Cir.10/22/03), 867 So.2d 723, 2003 WL 22404944, I note my position separately.
DOWNING, J., dissents and assigns reasons.
If a man purchases a Coke with a deceased cockroach therein, drinks it and becomes ill, then his injury would be covered under a bodily injury policy. However, if he does not drink the Coke then his claim is only for the replacement cost of the Coke and recovery is excluded. This would be a business risk because of a defective product not a "bodily injury" claim, even though there was potential for bodily injury, and recovery would be excluded under the bodily injury policy.
Similarly, you can't sue Ford in tort for a Pinto gas tank alleging you could be killed if it blows up. That is a product claim, not causing bodily injury, for the gas tank and not covered under this type of policy.
Never have I seen pleadings so intentionally and meticulously crafted to not claim damages because of bodily injury than the pleadings of the class action plaintiffs.
The result of this case will be that a person who has not yet suffered symptoms of carpal tunnel syndrome, but who may have microscopic cellular injury and desires to have a pad for the keyboard, may sue in tort for the cost of the pad. The insurer will now have to defend every redhibition claim where a creative lawyer can allege some potential but asymptomatic injury.
Interpreting these policies in this strained and liberal manner will convert every redhibition claim where there is potential for future bodily injury into a covered claim. That is not the purpose of this type of insurance and this opinion will cause havoc in the insurance industry.
I would affirm the trial court that there is no coverage and no duty to defend.
NOTES
[1] The federal district court which dismissed the multi-district action involving the Class Actions expressly concluded that "[t]he relief requested for each of these claims is identical." RFE Litigation, 248 F.Supp.2d at 458. Although the Farina and Pinney actions purportedly seek compensatory damages (including but not limited to the costs of headsets) and punitive damages, the classes of claimants are so defined as to exclude persons diagnosed with brain tumors or eye cancer, and purchasers of cell phones provided with headsets at the time of purchase.
[2] The defendant insurers provided primary or excess liability coverage at various times over the period of use of the members of the classes of plaintiffs in the Class Actions.
[3] This court, sitting en banc, has previously held that the summary judgment in favor of Zurich was a partial final judgment under La. C.C.P. art. 1915(A), appealable without the need for specific designation or "certification" by the trial court. Motorola, Inc. v. Associated Indemnity Corporation (Motorola I), 02-0716, p. 7 (La.App. 1st Cir.4/30/03), 867 So.2d 715, 719.
[4] It is readily apparent from a reading of the class action plaintiffs' pleadings that the interests for which they seek remedy are not their property rights as owners of cell phones, but rather their rights to be secure from invasion of bodily integrity. Thus, we need not address any issues relating to "property damage" covered under Zurich's policies, except with regard to the possible applicability of the "business risk" exclusions. Indeed, the parties implicitly concede this point in their briefs.
[5] For example, the Naquin plaintiffs have alleged that the class members "are exposed to [radio frequency radiation] which causes physical effects, changes and the risk of long-term injury including the potential for very significant long-term health problems," and that the radio frequency radiation "creates health risks and adverse effects by causing nerve damage, cellular damage, cellular dysfunction and/or other injury to humans." They specifically allege that Motorola and other manufacturers engaged in "misrepresentation and conspiracy," that Motorola "knew or should have known" of foreseeable "health risk," that it failed to warn its customers of such risk, that it "intentionally, negligently and wrongfully" represented its cell phones as safe, that it "grossly misled and misinformed" the public, that it failed to "protect users from health risks, effects, and dangers," that it "willfully and wantonly attempted to suppress information from its customers," and that "the failure to include a headset ... constitutes a negligent or intentional misrepresentation ... and/or is a redhibitory vice or defect." (Our emphasis.) All of these allegations are characteristic of delictual or "mixed" causes of action such as products liability actions. The negligence allegations, in particular, are telling in this regard.
[6] Later in its opinion, however, the court stated that "[t]he plaintiffs simply do not seek to compensate personal injury in these suits [,]" but nevertheless seek "compensatory and declaratory relief." RFE Litigation, 248 F.Supp.2d at 467 (our emphasis).
[7] The copy of the policy in the record, attached to the affidavit of Zurich's counsel, may be incomplete in that the policy definitions begin at the top of a page with the word "occurrence," without any preceding heading or title designating a "definitions" section. Additionally, we note that the term, "bodily injury," appears in boldface in the insuring agreement, as do "occurrence" and other defined terms following it alphabetically. Nevertheless, we are bound to decide this matter based upon the record before us.
[8] In Western World Insurance Company, Inc. v. Paradise Pools & Spas, Inc., 93-723 (La.App. 5th Cir.2/23/94), 633 So.2d 790, a liability insurer brought an action for declaratory judgment against its insured, a swimming pool contractor, and the insured's customers who had sued it for breach of contract based upon structural defects in a swimming pool. Although the court found that the policy excluded coverage for contractual liability and defects in workmanship or materials, it agreed that the policy's definition of occurrence, identical to that involved here, was "ambiguous" and could be construed to mean "the development of cracks in the swimming pool." Id., 93-723 at p. 6, 633 So.2d at 794.
[9] See generally Keith W. Lapeze, Comment, Recovery for Increased Risk of Disease in Louisiana, 58 La.L.Rev. 249 (1997).
[10] See also Powell v. Weaver, 01-2937, pp. 4-5 (La.2/7/03), 841 So.2d 742, 744 (Weimer, J., concurring).
[11] Accord, New Castle County v. Hartford Accident and Indemnity Company, 933 F.2d 1162, 1188-90 (3rd Cir.1991) (interpreting Delaware law); Aetna Insurance Company v. Aaron, 112 Md.App. 472, 685 A.2d 858, 864 (12/3/96) (applying Maryland law). Cf. A.Y. McDonald Industries, Inc. v. Insurance Company of North America, 475 N.W.2d 607, 624 (Iowa 1991) ("Costs incurred to pay for preventive measures taken in advance of pollution are not `damages because of property damage.' But costs for preventive measures taken after such pollution are `damages because of property damage' and so are covered.") In the case of Minnesota Mining and Manufacturing Company v. Travelers Indemnity Company, 457 N.W.2d 175, 179 (Minn.1990), the Minnesota Supreme Court observed that Minnesota law no longer recognizes a substantial distinction between "legal" and "equitable" claims, and held that the term "damages" in a CGL policy did not have a meaning warranting "a distinction between actions seeking purely monetary relief and actions seeking forms of equitable relief."
[12] Exclusion (m) is a typical CGL "business risk" or "failure to perform" exclusion. 15 W. Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise: Insurance Law and Practice § 197 (1996). It provides:

This policy does not apply: ...
(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured ...
Exclusion (n), a typical CGL "damage to products" exclusion, Id. at § 198, provides that the policy does not apply "to property damage to the named insured's products arising out of such products or any part of such products."
Exclusion (o) is a typical CGL "work performed" exclusion, Id., and excludes coverage "to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." Both Exclusion (n) and Exclusion (o) are also referred to collectively as "work product" exclusions. Id.
[13] Our review of the jurisprudence of other jurisdictions convinces us that their courts would likely reach the same result. See, e.g., Minnesota Mining and Manufacturing, 457 N.W.2d at 181: "The utility of the [CGL] policy would be seriously called into question if coverage is permitted to hinge on such a fortuitous event as whether a plaintiff bringing an action against the insured has framed his complaint in equity rather than in law."